1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    BERTHA FONSECA,                          Case No. 1:21-cv-01540-CDB (SS)

12              Plaintiff,                       ORDER GRANTING PLAINTIFF'S
                                                 MOTION FOR SUMMARY JUDGMENT
13         v.                                    AND REMANDING ACTION PURSUANT
                                                 TO SENTENCE FOUR OF 42 U.S.C.
14    COMMISSIONER OF SOCIAL SECURITY,           §405(g)

15              Defendant.                       (Doc. 17)

16

17         Plaintiff Bertha Fonseca ("Plaintiff") seeks judicial review of a final decision of the

18    Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

19    disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before

20    the Court on the Administrative Record (Doc. 12, hereinafter "AR") and the parties' briefs (Docs.

21    17, 18), which were submitted without oral argument. Upon review of the record, the Court finds

22    and rules as follows.[1]

23    **I.    BACKGROUND**

24         **A.    Administrative Proceedings and ALJ's Decision**

25         On May 22, 2018, Plaintiff filed an application for a period of disability and disability

26    insurance benefits with an alleged onset date of May 22, 2018. (AR 21). Plaintiff's claim was

27         _____

28    [1] On January 7, 2022, after the parties consented to the jurisdiction of a U.S. Magistrate
      Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to a
      U.S. Magistrate Judge. (Doc. 11).

1    initially denied on September 10, 2018, and again upon reconsideration on November 16, 2018.

2    *Id.* Plaintiff requested a hearing before an Administrative Law Judge on January 9, 2019. *Id.*

3    Matthew C. Kawalek, the Administrative Law Judge ("ALJ"), held a telephone hearing on October

4    7, 2020, wherein Plaintiff, with the assistance of a Spanish interpreter, counsel for Plaintiff Jonathan

5    O. Pena, and impartial vocational expert Van Iderstine, all testified. *Id.* The ALJ issued an

6    unfavorable decision on February 12, 2021, finding Plaintiff was not disabled. (AR 15, 24-35).

7    The Appeals Council denied Plaintiff's request for review on August 12, 2021, rendering the ALJ's

8    decision as the final decision of the Commissioner. (AR 1). Plaintiff subsequently filed this action

9    seeking judicial review of the ALJ's decision. (Doc. 1).

10         In the decision, the ALJ considered Plaintiff's claims using the five-step sequential

11   evaluation required by 20 C.F.R. § 416.920(a). (AR 24-35). The ALJ found that Plaintiff meets

12   the insured status requirements of the Social Security Act ("Act") through June 30, 2023. (AR 24).

13   At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May

14   22, 2018, the alleged onset date. *Id.*

15         At step two, the ALJ found that Plaintiff had the following medically determinable

16   impairments ("MDIs") through the date last insured which significantly limit the ability to perform

17   basic work activities as required by Social Security Ruling ("SSR") 85-28: osteoarthritis of the

18   bilateral hands; deQuervain's disease; mild degenerative joint disease of the right knee; right

19   trochanteric bursitis; bilateral carpal tunnel syndrome; degenerative disc disease, stenosis,

20   spondylosis of the lumbar spine with postlaminectomy syndrome; degenerative joint disease of the

21   sacroiliac joints; diabetes mellitus with peripheral neuropathy; rheumatoid arthritis; and obesity.

22   *Id.* The ALJ considered the severity of Plaintiff's mental impairments, considering whether the

23   four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[2]

24

25

26         [2] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas
     of functioning: (1) understanding, remembering, or applying information; (2) interacting with
     others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.
27   20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the
     four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or
28   "extreme." (*Id.*). To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation

1    Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one

2    "extreme" limitation, and do not cause more than minimal limitation in Plaintiff's ability to perform

3    basic mental work activities, the ALJ found the paragraph B criteria were not satisfied and that the

4    mental impairments are non-severe.  (AR 25-26).

5         At step three, the ALJ found that Plaintiff did not have an impairment, or any combination

6    of impairments, that met or medically equaled the severity of one of the listed impairments in 20

7    C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  (AR

8    27).

9         Prior to step four, the ALJ found that Plaintiff has the RFC to perform a reduced range of

10   light work as defined in 20 C.F.R. 404.1567(b) meaning that:

11        [Plaintiff] can occasionally lift/carry 20 pounds and frequently lift/carry ten
          pounds; she can stand and/or walk four hours and sit six hours of an eight-hour
12        workday; she can never climb ladders, ropes, or scaffolds, and she can occasionally
          balance, stoop, kneel, crouch, crawl, or climb ramps and stairs; she can frequently
13        reach, handle, finger, or operate hand controls with the bilateral upper extremities;
14        she can tolerate no more than occasional exposure to extreme cold or vibration, and
          she can have no exposure to hazards, including unprotected heights or operating
15        heavy machinery.

16   (AR 28).   In considering Plaintiff's symptoms and the extent to which these symptoms can

17   reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ

18   noted he followed the two-step process as set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, and 20

19   C.F.R. § 404.1520c. *Id.*  The ALJ found "after careful consideration of the evidence" that Plaintiff's

20   MDIs could reasonably be expected to cause the alleged symptoms but that her statements

21   concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent

22   with the medical evidence and other record evidence.  (AR 29).  The ALJ, citing to Plaintiff's

23   hearing testimony, treatment notes, prior administrative medical findings, and activities of daily

24   living, determined that the evidence of record did not provide support for the existence of greater

25   limitations above those assessed in the RFC regarding Plaintiff's impairments.  (AR 33).

26        At step four, the ALJ determined that Plaintiff has no past relevant work under 20 C.F.R.

27
     in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the
28   areas of mental functioning.  (*Id.*).

3

1    404.1565.  (AR 34).  The ALJ found that Plaintiff is an individual closely approaching advanced

2    age on the alleged disability onset date pursuant to 20 C.F.R. § 404.1563 and has a limited

3    education. *Id.*

4    At step five, the ALJ found that there are jobs that exist in significant numbers in the

5    national economy that Plaintiff could perform.  (AR 34).  The ALJ cited to information clerk,

6    storage facility rental clerk, and parking lot attendant based on the testimony of the vocational

7    expert. *Id.*  The ALJ therefore concluded a finding of "not disabled" was appropriate under sections

8    216(i) and 223(d) of the Act from May 22, 2018, through the date of the decision.  (AR 35).

9    **B.    Medical Record and Hearing Testimony**

10    The relevant hearing testimony and medical record were reviewed by the Court and will be

11    referenced below as necessary to this Court's decision.

12    **II.    LEGAL STANDARD**

13    A district court's review of a final decision of the Commissioner of Social Security is

14    governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

15    Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is

16    based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence"

17    means "relevant evidence that a reasonable mind might accept as adequate to support a

18    conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

19    equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation

20    omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support

21    a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation

22    omitted).  In determining whether the standard has been satisfied, a reviewing court must consider

23    the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

24    The court will review only the reasons provided by the ALJ in the disability determination

25    and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205,

26    42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its

27    judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the

28    evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d

1    1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account

2    of an error that is harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's]

3    ultimate nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing

4    the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

5    *Sanders*, 556 U.S. 396, 409-10 (2009).

6             A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits

7    within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any

8    substantial gainful activity by reason of any medically determinable physical or mental impairment

9    which can be expected to result in death or which has lasted or can be expected to last for a

10   continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the

11   claimant's impairment must be "of such severity that he is not only unable to do his previous

12   work[,] but cannot, considering his age, education, and work experience, engage in any other kind

13   of substantial gainful work which exists in the national economy."  42 U.S.C. §

14   1382c(a)(3)(B).

15            The Commissioner has established a five-step sequential analysis to determine whether a

16   claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

17   Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant

18   is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not

19   disabled.  20 C.F.R. § 416.920(b).

20            If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

21   two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R.

22   § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments

23   which significantly limits [his or her] physical or mental ability to do basic work activities," the

24   analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not

25   satisfy this severity threshold, however, the Commissioner must find that the claimant is not

26   disabled.  *Id*.

27             At step three, the Commissioner compares the claimant's impairment to impairments

28   recognized by the Commissioner to be so severe as to preclude a person from engaging in

1    substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more

2    severe than one of the enumerated impairments, the Commissioner must find the claimant disabled

3    and award benefits.  20 C.F.R. § 416.920(d).

4        If the severity of the claimant's impairment does not meet or exceed the severity of the

5    enumerated impairments, the Commissioner must pause to assess the claimant's "residual

6    functional capacity," defined generally as the claimant's ability to perform physical and mental

7    work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

8        At step four, the Commissioner considers whether, in view of the claimant's RFC, the

9    claimant is capable of performing work that he or she has performed in the past (past relevant

10   work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work,

11   the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the

12   claimant is incapable of performing such work, the analysis proceeds to step five.

13       At step five, the Commissioner considers whether, in view of the claimant's RFC, the

14   claimant is capable of performing other work in the national economy.  20 C.F.R. §

15   416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational

16   factors such as the claimant's age, education, and past work experience.  *Id.*  If the claimant is

17   capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20

18   C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis

19   concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

20       The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

21   180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

22   Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

23   work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

24   *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

25   **III.    ISSUES AND ANALYSIS**

26       Plaintiff seeks judicial review of the Commissioner's final decision denying her application

27   and raises two issues:

28       1.  Whether the ALJ failed to consider Plaintiff's inability to communicate in English,

6

1    which would preclude the performance of the jobs identified by the vocational expert,

2    and the ALJ failed to reconcile this conflict between the VE's testimony and the DOT;

3    and

4    2.    Whether the ALJ failed to include work-related limitations in the RFC consistent with

5    the nature and intensity of Plaintiff's limitations and failed to offer any clear and

6    convincing reasons for rejecting Plaintiff's subjective complaints.

7    (Doc. 17 at 1-2).

8    **A.    Whether the ALJ Failed to Consider Plaintiff's Inability to Speak English and**

9    **to Reconcile the Conflict Between the Vocational Expert and the DOT**

10    1.    Parties' Contentions

11    Plaintiff asserts that the ALJ failed to consider her inability to communicate in English

12    which would preclude the performance of the jobs identified by the vocational expert, and the ALJ

13    failed to reconcile this conflict between the vocational expert's testimony and the DOT.  (Doc. 17

14    at 14).  Plaintiff argues that the ALJ refused to consider Plaintiff's language barriers.  *Id.*  Plaintiff

15    asserts that the ALJ failed to obtain a reasonable explanation from the vocational expert as to

16    whether the DOT's language requirements could be met or accommodated by an individual who is

17    unable to communicate in English.  *Id.* at 17.  Plaintiff further argues that the ALJ's failure to

18    address or resolve this apparent conflict between the DOT and the vocational expert's testimony

19    constitutes error for the ALJ to rely on that testimony at step five of the sequential evaluation.  *Id.*

20    at 18.

21    Defendant contends the ALJ was not required to consider Plaintiff's English language

22    proficiency because the Agency revised the education categories effective April 27, 2020, which

23    removed English language proficiency as a relevant consideration at step five.  (Doc. 18 at 10-11).

24    Defendant contends that because the Agency no longer considers an individual's ability to speak

25    English as a vocational factor, the ALJ was neither permitted nor required to consider Plaintiff's

26    English language proficiency.  *Id.* at 11.  Defendant asserts there was no apparent conflict between

27    the jobs relied on at step five and Plaintiff's limited education level.  *Id.* at 12.

28    ///

1    2.    Governing Authority

2    Prior to April 27, 2020, the SSA considered a plaintiff's inability to communicate in English

3    in assessing a plaintiff's education level as part of the five-step sequential evaluation.  *See* 85 Fed.

4    Reg. 37, 10586-10587 (Feb. 25, 2020) (revising 20 C.F.R. § 416.964).  Effective April 27, 2020,

5    the SSA amended the regulations such that a plaintiff's lack of English language proficiency is no

6    longer a factor an ALJ considers when determining a plaintiff's disability eligibility.  *See id.*;

7    *Valdizon v. Kijakazi*, No. 1:20-cv-01271-SKO, 2022 WL 378656, *4 n. 5 (E.D. Cal. Feb. 8, 2022)

8    ("There is no longer an 'inability to communicate in English' category, and accordingly, this

9    category is no longer in the Medical-Vocational Guidelines.").

10    3.    Analysis

11    The parties acknowledge that the regulation concerning education was amended effective

12    as of April 27, 2020, to eliminate any reference to the ability to speak, read, and comprehend

13    English.  The SSA found that English language proficiency "is no longer a useful indicator of an

14    individual's educational attainment or of the vocational impact of an individual's education because

15    of changes in the national workforce since [the SSA] adopted the current rule more than 40 years

16    ago." 85 Fed. Reg. 10586, 10601 (Feb. 25, 2020).  The SSA determined that the amendment would

17    apply "to claims that are pending on or after the effective date [of April 27, 2020]."  *See* 85 Fed.

18    Reg. 13692-02, No. SSA-2017-0046, 2020 WL 1083309 (Mar. 9, 2020) (Social Security Ruling,

19    SSR 20-01p: How We Determine an Individual's Education Category).

20    Because the ALJ's decision here was rendered on February 12, 2021 (AR 15, 24-35), which

21    is after the effective date of the amendment, the ALJ was not required nor permitted to consider

22    Plaintiff's English language proficiency in determining Plaintiff's education and in consideration

23    of the vocational expert's testimony and the DOT.  *See, e.g.*, *Vang v. Comm'r of Soc. Sec.*, No.

24    1:21-cv-00488-SAB, 2022 WL 17812859, at *6 (E.D. Cal. Dec. 19, 2022) ("Plaintiff has cited no

25    authority requiring an ALJ to address English proficiency limitations in an RFC assessment or a

26    VE hypothetical under the current regulatory scheme. Indeed, recent agency guidance suggests that

27    such a consideration would be inappropriate."); accord *Arias v. Comm'r of Soc. Sec.*, No. CV-22-

28    08123-PCT-DMF, 2023 WL 2909220, at *3-4 (D. Az. April 12, 2023); *Juan R. v. Kijakazi*, No.

8

1    2:20-cv-11257-GJS, 2022 WL 3018056, at *4 (C.D. Cal. July 29, 2022); *Salimeh N. v. Comm'r of*

2    *Soc. Sec.*, No. C21-1523-SKV, 2022 WL 1963719, at *4-5 (W.D. Wash. June 6, 2022). *Cf. Rubio*

3    *v. O'Malley*, No. 3:23-cv-00399-CSD, 2024 WL 2518810, at *7 (D. Nev. May 23, 2024) (agreeing

4    that while an ALJ is no longer required to address English proficiency limitations with the VE at

5    step five, a conflict could arise where an ALJ does ask the VE to consider whether a claimant who

6    only speaks Spanish could perform the identified jobs, and the VE indicated that she could not).

7    Furthermore, the record indicates that Plaintiff has a limited education based on her attainment of

8    an eighth-grade education. *See* (AR 30, 337). *See* SSR 20-01p, 2020 WL 1083309 (Mar. 9, 2020)

9    ("We generally consider that a 7th grade through the 11th grade level of formal education is a

10   limited education."). Under the operative regulations and guidance, Plaintiff's inability to

11   communicate in English was irrelevant to the disability determination. *See id.* ("Neither the country

12   in which an individual was educated nor the language an individual speaks informs us about

13   whether the individual's reasoning, arithmetic, and language abilities are commensurate with his or

14   her formal education level."). An individual is considered illiterate "only if the evidence supports

15   a finding that the individual is unable to read or write a simple message in *any* language." *Id.* Here,

16   there is no evidence that Plaintiff cannot read and write in her native Spanish language. Thus, the

17   ALJ did not err in concluding Plaintiff had a limited education and finding there was no apparent

18   conflict between the jobs relied on at step five and Plaintiff's limited education level.

19          Because Plaintiff has not cited any authority requiring an ALJ to address English language

20   proficiency limitations in an RFC assessment or a vocational expert hypothetical under the current

21   regulatory scheme, and because SSA guidance indicates such consideration is inappropriate, the

22   Court finds the ALJ did err in declining to discuss Plaintiff's lack of English language proficiency

23   at step five.

24          **B.    Whether the ALJ Failed to Include Work-Related Limitations in the RFC**

25                **Consistent with the Nature and Intensity of Plaintiff's Limitations and**

26                **Improperly Rejected Plaintiff's Subjective Symptomology Testimony**

27                1.    Parties' Contentions

28          Plaintiff contends the ALJ failed to offer any clear and convincing reasons for rejecting her

1    subjective complaints.  (Doc. 17 at 18).  Plaintiff argues that the ALJ improperly concluded her

2    testimony was inconsistent with the objective medical evidence because the record showed normal

3    findings, her treatment was mostly conservative, and she could perform a wide range of activities

4    of daily living.  *Id.* at 19.  Plaintiff contends the ALJ's rejection of her subjective complaints based

5    on her normal findings is not based on substantial evidence as the record shows Plaintiff's physical

6    exams indicate "significant greater findings than the ALJ generally alleges."  *Id.*  Plaintiff argues

7    her treatment was not conservative as she was administered and referred to pain management,

8    Remicade drug infusions, steroid injections, narcotic pain medications, and carpal tunnel surgery.

9    *Id.* at 20-21.  Plaintiff further contends the ALJ failed to explain how her daily activities contradict

10    her pain symptoms.  *Id.* at 21.

11        Defendant contends the ALJ's evaluation of Plaintiff's subjective complaints is supported

12    by substantial evidence as the ALJ considered Plaintiff's claims of disabling back and hand pain

13    and imposed functional limitations based on her severe impairments.  (Doc. 18 at 5-6).  Defendant

14    argues that Plaintiff has not shown any error in the ALJ's analysis nor any probative evidence that

15    the ALJ did not consider in assessing the RFC.  *Id.* at 6.  Defendant contends the ALJ found the

16    nature and effectiveness of Plaintiff's treatment inconsistent such that substantial evidence supports

17    the ALJ's decision.  *Id.* at 7.  Defendant further contends that the ALJ's finding that Plaintiff could

18    perform a wide range of daily activities illustrate the inconsistency of those activities with her

19    allegations.  *Id.* at 8.

20            2.    Governing Authority

21        As discussed above, a plaintiff's RFC is "the most [the plaintiff] can still do despite [his or

22    her] limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC assessment is an administrative

23    finding based on all relevant evidence in the record, not just medical evidence.  *Bayliss v. Barnhart*,

24    427 F.3d 1211, 1217 (9th Cir. 2005).  In determining the RFC, the ALJ must consider all limitations,

25    severe and non-severe, that are credible and supported by substantial evidence in the record.  *Id.*

26    However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and

27    not identical to them.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)

28    ("Although the ALJ rejected any implication in Dr. Koogler's evaluation that Turner was disabled,

10

1    he did incorporate Dr. Koogler's observations into his residual functional capacity determination.

2    … These limitations were entirely consistent with Dr. Koogler's limitation."). Ultimately, a

3    plaintiff's RFC is a matter for the ALJ to determine. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th

4    Cir. 2001).

5        The ALJ is responsible for determining credibility,[3] resolving conflicts in medical

6    testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A

7    plaintiff's statements of pain or other symptoms are not conclusive evidence of a physical or mental

8    impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an

9    individual's statements of symptoms alone are not enough to establish the existence of a physical

10   or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007)

11   ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional

12   impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674 F.3d 1104,

13   1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

14   Determining whether a plaintiff's testimony regarding subjective pain or symptoms is credible

15   requires the ALJ to engage in a two-step analysis. *Id.* at 1112. The ALJ must first determine if

16   "the [plaintiff] has presented objective medical evidence of an underlying impairment which could

17   reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*,

18   504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not

19   require the plaintiff to show that his impairment could be expected to cause the severity of the

20   symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.

21   *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

22       If the first step is met and there is no evidence of malingering, "the ALJ must provide

23   'specific, clear and convincing reasons for' rejecting the [plaintiff's] testimony." *Treichler v.*

24

25       [3] SSR 16-3p, which applies to disability applications heard by the agency on or after March
26   28, 2016, eliminated the use of the term "credibility" to emphasize that subjective symptom
     evaluation "is not an examination of an individual's character," but an endeavor to determine how
27   "symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2017 WL
     5180304, at *3. Nevertheless, the Ninth Circuit continues to reference an ALJ's "credibility
28   assessment" when reviewing claims that an ALJ impermissibly discounted a claimant's testimony.
     *E.g., Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020).

1    *Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281).  *See*

2    *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse

3    credibility finding must be based on "clear and convincing reasons").  The ALJ must make findings

4    that support this conclusion, and the findings must be sufficiently specific to allow a reviewing

5    court to conclude the ALJ rejected the plaintiff's testimony on permissible grounds and did not

6    arbitrarily discredit the plaintiff's testimony. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

7        The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the

8    [plaintiff's] testimony, nor do they require ALJs to draft dissertations when denying benefits."

9    *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22,

10   2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v.*

11   *Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if

12   the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,'

13   the Court will still defer to the ALJ's decision.") (*quoting Wilson v. Berryhill*, 757 Fed. Appx. 595,

14   597 (9th Cir. 2019)). "The standard isn't whether our court is convinced, but instead, whether the

15   ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489,

16   494 (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

17       The ALJ may consider numerous factors in weighing a plaintiff's credibility, including "(1)

18   ordinary techniques of credibility evaluation, such as the [plaintiff's] reputation for lying, prior

19   inconsistent statements concerning the symptoms, and other testimony by the [plaintiff] that

20   appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to

21   follow a prescribed course of treatment; and (3) the [plaintiff's] daily activities." *Smolen*, 80 F.3d

22   at 1284. In evaluating the credibility of symptom testimony, the ALJ must also consider the factors

23   identified in SSR 16-3P.  (*Id.*) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)).

24   Accord *Bray v. Comm'r Soc. Sec.*, 554 F.3d 1219, 1227 (9th Cir. 2009). These factors include:

25
             (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or
26           other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The
             type, dosage, effectiveness, and side effects of any medication an individual takes
27           or has taken to alleviate pain or other symptoms; (5) Treatment, other than
             medication, an individual receives or has received for relief of pain or other
28           symptoms; (6) Any measures other than treatment an individual uses or has used to
             relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15

1      to 20 minutes every hour, or sleeping on a board); and (7) Any other factors
       concerning an individual's functional limitations and restrictions due to pain or
2      other symptoms.

3    SSR 16-3P, 2017 WL 5180304, at *7.  *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is

4    supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533

5    F.3d at 1039 (citations and internal quotation marks omitted).

6          The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

7    demanding requirement in Social Security cases.'" *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th

8    Cir. 2014) (*quoting Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A

9    finding that a [plaintiff's] testimony is not credible must be sufficiently specific to allow a

10   reviewing court to conclude the adjudicator rejected the [plaintiff's] testimony on permissible

11   grounds and did not arbitrarily discredit a [plaintiff's] testimony regarding pain." *Brown-Hunter*

12   *v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

13         "The fact that a [plaintiff's] testimony is not fully corroborated by the objective medical

14   findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter,*

15   260 F.3d 1044, 1049 (9th Cir. 2001).  *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your

16   statements about the intensity and persistence of your pain or other symptoms or about the effect

17   your symptoms have on your ability solely because the objective medical evidence does not

18   substantiate your statements."). Rather, where a plaintiff's symptom testimony is not fully

19   substantiated by the objective medical record, the ALJ must provide additional reasons for

20   discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must

21   specify what testimony is not credible and identify the evidence that undermines the [plaintiff's]

22   complaints – '[g]eneral findings are insufficient.'" (*Id.*) (*quoting Reddick v. Chater*, 157 F.3d 715,

23   722 (9th Cir. 1998)).

24         However, the medical evidence "is still a relevant factor in determining the severity of the

25   [plaintiff's] pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

26   The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical evidence

27   from testimony that is "contradicted" by the medical records and concluded that contradictions with

28   the medical records, by themselves, are enough to meet the clear and convincing standard.

1    *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (*quoting Carmickle*, 533 F.3d at 1161).

2               3.      Analysis

3          The ALJ summarized Plaintiff's subjective symptom testimony from the hearing.  (AR 29).

4    After finding that Plaintiff's impairments could reasonably be expected to cause some of her alleged

5    symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and

6    limiting effects of his symptoms are not entirely consistent with the record.  *Id.*; *see Treichler*, 775

7    F.3d at 1103 (noting that ALJs "routinely include this [boilerplate] statement in their written

8    findings as an introduction ... before [identifying] what parts of the claimant's testimony were not

9    credible and why.").

10         In discounting Plaintiff's testimony, the ALJ reasoned that Plaintiff's statements were

11   inconsistent with the longitudinal evidence of record as (1) Plaintiff's treatment notes indicate

12   otherwise normal findings as "she generally exhibits reduced range of motions, tenderness, no

13   swelling, no active synovitis, no effusion, normal gait, mostly full strength, intact sensation, and no

14   cranial nerve deficit[,]" (2) her treatment was mostly conservative and she reported benefit from

15   medications and injections, and (3) her activities of daily living were consistent with the assessed

16   RFC.  (AR 33).

17                    a.      *Plaintiff's normal findings are not a clear and convincing reason to*

18                            *reject her symptomology testimony.*

19         In the decision, the ALJ acknowledged Plaintiff does have severe physical impairments but

20   found that she "generally exhibits reduced range of motions, tenderness, no swelling, … normal

21   gait, mostly full strength, intact sensation, and no cranial nerve deficit."  (AR 33) (citing Exhibits

22   ("Exs.") 5F, 8F, 10F, 13F, 15F).  The ALJ found that "the longitudinal evidence of record does not

23   support [Plaintiff's] allegations concerning the intensity, persistence, and limiting effects of [her]

24   symptoms" based in part of these normal findings.  *Id.*  However, the ALJ failed to explain how

25   these normal findings contradict Plaintiff's pain testimony.  Instead, the ALJ's decision noted

26   various findings that appear to substantiate Plaintiff's pain testimony.  For example, the ALJ noted

27   Plaintiff presented in March and June 2019 complaining of lumbar pain radiating to her lower

28   extremity associated with cramping, reported pain as a "5/10" in one physical examination note,

                                              14

1    and reported in April 2020 with pain to palpation of the lumbar spine and decreased range of motion

2    with pain.    (AR 31) (citing Exs. 13F, 15F).    The ALJ noted the findings of Plaintiff's

3    rheumatologist, Dr. Swe, including treatment notes reporting increased joint pain and findings of

4    joint tenderness, increased medication dosage of Hydroxychloroquine, joint pain in the left thumb

5    and left elbow as well as morning stiffness, and reports of multiple joint pain in February 2019.

6    (AR 30) (citing Exs. 2F, 5F, 7F, 10F, 15F). Further, examination records show Plaintiff has

7    complained of tenderness, joint pain, decreased range of motion, and decreased grip and bodily

8    strength.  *See* (AR 587, 593, 632, 783, 788, 793-94).  These records do not demonstrate any

9    inconsistency in Plaintiff's alleged limitations as it is conceivable she experiences pain and

10    discomfort from her physical impairments.

11         "The fact that a [plaintiff's] testimony is not fully corroborated by the objective medical

12    findings, in and of itself, is not a clear and convincing reason for rejecting it."  *Vertigan,* 260 F.3d

13    at 1049; *accord*, *Toni D. v. Saul*, No. 3:19-cv-820-SI, 2020 WL 1923161, at *6 (D. Or. Apr. 21,

14    2020) ("the generic chart note of 'no acute distress' is not a clear and convincing reason to discount

15    Plaintiff's symptom testimony"); *Barbara P. v. Kijakazi*, No. 2:20-cv-00326-MKD, 2021 WL

16    4295745, at *7 (E.D. Wash. Sep. 21, 2021) ("In repeatedly citing a brief, generic chart note as one

17    of the few reasons to reject Ms. Witte's opinions, the ALJ mischaracterized the record. The

18    longitudinal treatment record shows more mixed results, and by not analyzing relevant findings

19    within the same treatment notes, the ALJ's characterization of the record is not supported by

20    substantial evidence."); *Troy A. H. v. Comm's of Soc. Sec.*, No. 6:20-cv-01228-YY, 2022 WL

21    336846, at *5 (D. Or. Feb. 4, 2022) ("[T]he ALJ selectively relied upon notes indicating 'no acute

22    distress' while ignoring plaintiff's subjective complaints of pain and gastrointestinal distress

23    accompanied by objective exam findings of abdominal tenderness within the same exam.").

24         In short, the ALJ failed to explain how the cited findings contradict Plaintiff's pain

25    testimony other than the conclusory statement that the "longitudinal evidence" did not support

26    Plaintiff's allegations of disabling symptoms.  Thus, the ALJ failed to offer a clear and convincing

27    reason to discount Plaintiff's credibility based on any purported inconsistency.

28    ///

1

       *b.   Plaintiff's non-conservative treatment does not provide a clear and*

2

            *convincing reason to reject her symptomology testimony.*

3

    The ALJ also discounted Plaintiff's pain testimony because "treatment was mostly

4

conservative and [Plaintiff] reported benefit from medications and injections, and denied side

5

effects." (AR 33).

6

    "[E]vidence of 'conservative treatment' is sufficient to discount a [plaintiff's] testimony

7

regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007)

8

(citation omitted); *Shepard v. Colvin*, No. 1:14-cv-1166-SMS, 2015 WL 9490094, at *7 (E.D. Cal.

9

Dec. 30, 2015) ("[p]rior cases in the Ninth Circuit have found that treatment was conservative when

10

the claimant's pain was adequately treated with over-the-counter medication and other minimal

11

treatment[.]"); *accord Teresa Marie C. Kijakazi*, No.: 21-cv-01729-DEB, 2023 WL 3564939, at *5

12

(S.D. Cal. Mar. 28, 2023) ("The record here establishes Plaintiff's back and knee pain was managed

13

with medication and a single administration of bilateral knee injections … supporting the ALJ's

14

finding that Plaintiff's treatment was conservative."); *Walter v. Astrue*, No. 09-CV-1569-AGR,

15

2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly discredited claimant's

16

allegations of low back and knee pain based on conservative treatment consisting of Vicodin,

17

physical therapy, and a steroid injection).

18

    Upon review of the record, the Court finds that Plaintiff's treatment was not conservative.

19

The ALJ noted that Plaintiff was treated multiple times with Tramadol and in June 2018, she asked

20

"if there was anything stronger than Tramadol to take" for her right knee pain. (AR 30) (citing Exs.

21

5F, 15F); *id.* at 582. As reflected in physical examination notes with Dr. Swe and noted by the

22

ALJ, in June 2018, Plaintiff's dosage of Hydroxychloroquine was increased to 400 mg daily, and

23

in August 2018, Plaintiff's reported joint pain in her left thumb and left elbow and morning stiffness

24

were "partially relieved by Tramadol and Dilofenac[.]" (AR 30) (citing Ex. 10F). In March 2020,

25

Plaintiff "restarted Enbrel and was recommended to restart Remicade" but "was postponed due to

26

COVID." (AR 31) (citing Ex. 16F). The ALJ noted another instance in which Plaintiff received

27

treatment through pain management and an epidural injection. *Id.* (citing Ex. 13F, 16F). Further,

28

the record reflects Plaintiff was "referred to pain management and Remicade infusions ordered by

1    her rheumatologist" due to her continual pain and positive examination findings, and was

2    administered Remicade in April and May of 2020.  (Doc. 17 at 20-21) (citing AR 872, 857, 859).

3         Plaintiff's treatment record contradicts the ALJ's contention that her purported conservative

4    treatment has been successful in reducing her symptoms, and indicates the ALJ's finding here is

5    not supported by substantial evidence to discount the subjective symptom testimony.  *See, e.g.,*

6    *Denise M. v. O'Malley*, No. 3:23-cv-00155-SLG, 2024 WL 3159485, *10-12 (D. Al. June 25, 2024)

7    ("Plaintiff's pain and symptoms did not significantly improve in a way that contradicts her

8    testimony. … Consequently, the ALJ failed to provide the Court with clear and convincing reasons

9    for discounting Plaintiff's symptom testimony."); *Davis v. Saul*, No. 20-cv-814-BLM, 2021 WL

10   2333256, *6 (S.D. Cal. June 7, 2021) ("Plaintiff's use of prescribed narcotic medication in

11   conjunction with a caudal epidural steroid injection and a recommendation for gastric bypass

12   surgery is not conservative treatment."); *Madrigal v. Berryhill*, No. CV 17–824–PLA, 2017 WL

13   5633028, at *6 (C.D. Cal. Nov. 21, 2017) ("[P]laintiff has been prescribed strong prescription pain

14   medications, including the narcotic medication Norco, has received spinal injections, and has been

15   referred for a lap band surgery consultation, treatment that is not necessarily conservative.").

16              *c.    Plaintiff's activities of daily living do not provide a clear and*

17                     *convincing reason to reject her symptomology testimony.*

18        An ALJ may reject a plaintiff's subjective symptom testimony if it is inconsistent with the

19   plaintiff's activities of daily living.  *Tommasetti*, 533 F.3d at 1039.  Specifically, in discounting a

20   plaintiff's credibility, an ALJ properly may rely on ADLs: (1) when daily activities demonstrate

21   the plaintiff has transferable work skills, and (2) when daily activities contradict the plaintiff's

22   testimony as to the degree of functional limitation.  *Orn*, 495 F.3d at 639.  However, "disability

23   [plaintiffs] should not be penalized for attempting to lead normal lives in the face of their

24   limitations."  *Reddick*, 157 F.3d at 722; *see Smolen*, 80 F.3d at 1284 n.7 ("The Social Security Act

25   does not require that [plaintiffs] be utterly incapacitated to be eligible for benefits, and many home

26   activities may not be easily transferable to a work environment where it might be impossible to rest

27   periodically or take medication.").  "The mere fact that a plaintiff has carried on with certain daily

28   activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any

1    way detract from [their] credibility[.]"  *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005)

2    (quoting *Vertigan*, 260 F.3d at 1050).

3        Here, ALJ considered and relied on Plaintiff's reported ADLs of driving, personal hygiene,

4    sweeping, shopping, watching television, washing dishes, and doing laundry.  (AR 33).  The ALJ

5    determined that the findings support the limitations assessed in the RFC, but do not support the

6    extent of her subjective complaints.  *Id.*

7        However, in rejecting Plaintiff's testimony, the ALJ fails to adequately explain how

8    Plaintiff's described ADLs conflict with her claimed limitations or demonstrate an ability to

9    function in the workplace.  That she at times is able to drive, shop, and do personal care activities

10   and chores does not undermine Plaintiff's claim she is unable to sustain work without experiencing

11   discomfort or pain.  *See Webb*, 433 F.3d at 688; *Orn*, 495 F.3d at 639.  Defendant's arguments to

12   the contrary (Doc. 18 at 8) are unpersuasive.  To take one example, Defendant notes a purported

13   inconsistency between Plaintiff's testimony "that she could lift and carry no more than five pounds"

14   and the fact that she "reported that she could do laundry and shop for groceries."  *Id.*  First,

15   Plaintiff's testimony that she could lift/carry no more than five pounds was in response to her

16   attorney's prompt to give a "best estimate" of her weight limits, and Plaintiff's response plainly

17   reflects it was, in fact, an estimate.  Second, there is no obvious inconsistency between being able

18   to lift/carry a *de minimis* amount of weight and to go shopping.  Finally, the ALJ did not expressly

19   identify this testimony or the comparison Defendant makes in his brief in finding only generally an

20   inconsistency between Plaintiff's testimony and her ADLs.  The Court's review is limited to the

21   reasoning and factual findings offered by the ALJ, not post-hoc explanations that attempt to "intuit

22   what the adjudicator may have been thinking."  Bray, 554 F.3d at 1125-26.

23       Nor does the ALJ show how these occasional activities equate to transferable work skills.

24   *See, e.g., Wilson v. Comm'r of Soc. Sec. Admin*., 303 Fed. Appx. 565, 566 (9th Cir. 2008) (finding

25   a plaintiff's occasional driving does not render him able to work); *Costa v. Berryhill*, 700 Fed.

26   Appx. 651, 653 (9th Cir. 2017) ("The ability to accomplish daily tasks irregularly does not

27   necessarily equate with an ability to work.").  Thus, the undersigned cannot ascertain which of

28   Plaintiff's symptomology testimony the ALJ rejected based on ADL evidence, or why.  *See, e.g.,*

18

1    *Isis A. v. Saul*, No. 18-cv-01728-W-MSB, 2019 WL 3554969, at \*6 (S.D. Cal. Aug. 5, 2019)

2    ("Because the ALJ did not identify any actual inconsistency in his opinion or describe his reasoning,

3    the Court cannot ascertain which of Plaintiff's symptom and pain testimony the ALJ rejected based

4    on the ADL evidence.") (citing *inter alia Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.

5    2001)).          `

6          For these reasons, the ALJ did not identify a specific, clear, and convincing reason for

7    discrediting Plaintiff's symptom testimony when he failed to explain how those ADLs either

8    contradicted Plaintiff's testimony or equaled transferable work skills.

9                                    *       *       *       *       *

10         In sum, the ALJ failed to provide clear and convincing reasons supported by substantial

11   evidence in discounting Plaintiff's subjective symptomology testimony.  While an ALJ's error may

12   be harmless where she provides valid reasons for disbelieving a plaintiff's testimony in addition to

13   invalid reasons (*Molina*, 674 F.3d at 1115 (citing cases)), here, the ALJ provided no valid reasons

14   for rejecting Plaintiff's symptomology testimony.  Accordingly, the error is not harmless.

15         **C.      Remedy**

16         Plaintiff requests this case be remanded for further proceedings and a new decision.  (Doc.

17   17 at 22).  "The decision whether to remand for further proceedings or simply to award benefits is

18   within the discretion of court."  *Trevizo*, 871 F.3d at 682 (*quoting Sprague v. Bowen*, 812 F.2d

19   1226, 1232 (9th Cir. 1987)).  "Remand for further administrative proceedings is appropriate if

20   enhancement of the record would be useful."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (emphasis

21   omitted) (9th Cir. 2004).

22         In this case, the ALJ erred by failing to offer any clear and convincing reason supported by

23   substantial evidence to reject Plaintiff's symptomology testimony.  Given these errors, the Court

24   concludes that remand for further proceedings is warranted because additional administrative

25   proceedings may remedy the deficiencies in the ALJ's decision noted herein.

26   ///

27   ///

28   ///

1   **CONCLUSION AND ORDER**

2       For the reasons stated above, IT IS HEREBY ORDERED that:

3       1.  Plaintiff's motion for summary judgment (Doc. 17) is GRANTED;

4       2.  The ALJ's decision (Doc. 12) is REVERSED;

5       3.  This matter is REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further

6           proceedings consistent with this decision; and

7       4.  The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Bertha

8           Fonseca and against Defendant Commissioner of Social Security.

9   IT IS SO ORDERED.

10    Dated:   **November 25, 2025**        _____

11                                          UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28